IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

TIMOTHY D. DIXON,

    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No. 3:14-cv-468

Magistrate Judge Michael J. Newman
(Consent Case)

**DECISION AND ENTRY: (1) REVERSING THE ALJ'S NON-DISABILITY FINDING AS UNSUPPORTED BY SUBSTANTIAL EVIDENCE; (2) REMANDING THIS CASE TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) TERMINATING THIS CASE ON THE COURT'S DOCKET**

This Social Security disability benefits appeal is presently before the undersigned for disposition based upon the parties' consent. Doc. 12. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB"). This case is before the Court upon Plaintiff's Statement of Errors (doc. 9), the Commissioner's memorandum in opposition (doc. 10), Plaintiff's reply (doc. 11), the administrative record (doc. 7),[1] and the record as a whole.

**I.**

**A.**    **Procedural History**

Plaintiff filed for DIB alleging a disability onset date of October 25, 2009. PageID 195-98. Plaintiff claims disability as a result of a number of alleged impairments

---

[1] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

including, *inter alia*, multiple spine imairments, bilateral rotator cuff tears, and depressive disorder. PageID 58.

After initial denials of his application, Plaintiff received a hearing before ALJ Thomas L. Wang. PageID 75-111. The ALJ issued a written decision on July 8, 2013 finding Plaintiff not disabled. PageID 58-68. Specifically, the ALJ's findings were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since October 25, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: multi-level degenerative disc disease; central canal stenosis at C4-5; bilateral rotator cuff tears and acromioclavicular joint osteoarthritis; depressive disorder; and anxiety disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ["RFC"] to perform light work[2] as defined in 20 CFR 404.1567(b) except that the claimant is capable of only occasionally climbing ramps, stairs, ladders, ropes or scaffolds; occasionally balancing, stooping, kneeling, crouching and crawling; frequently reaching, handling and fingering; and no overhead reaching. Mentally, the claimant would require a low stress job, meaning only occasional changes in the work setting, and would be permitted to be off task for five percent of the workday.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

---

[2] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 404.1567. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* § 404.1567(b). An individual who can perform light work is presumed also able to perform sedentary work. *Id.* Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* § 404.1567(a).

2

7. The claimant was born [in] 1958 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 25, 2009, through the date of this decision (20 CFR 404.1520(g)).

PageID 60-68.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 48-50. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

B. **Evidence of Record**

In his decision, the ALJ summarized relevant medical evidence of record in this case. PageID 65-66. Plaintiff, in his Statement of Errors, details the medical evidence relevant to his arguments on appeal. Doc. 9 at PageID 788-94. The Commissioner defers to the ALJ's recitation of evidence and offers no objections to Plaintiff's summary of relevant facts. Doc. 10 at PageID 804. Accordingly, except as otherwise noted herein, the Court incorporates the ALJ's

3

recitation of the evidence as well as Plaintiff's summary of the evidentiary record. Where applicable, the Court will identify the medical evidence relevant to this decision.

## II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id*. at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for DIB benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability"

4

includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin*, 475 F.3d at 730, the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.*, 181 F.Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.

In his Statement of Errors, Plaintiff argues that the ALJ erred in: (1) weighing the opinion of his treating physician;[3] and (2) applying the Medical Vocational Guidelines (*i.e.*, the "Grid" found at 20 C.F.R. Pt. 404, Subpt. P, App. 2) in a mechanical fashion where -- at the time of the ALJ's decision -- he was months shy of being considered an individual "of advanced age" under

---

[3] The treating physician opinion challenged was offered by a doctor at the Adena Bone and Joint Center. *See* PageID 782. The name on the report, however, is illegible. *See* doc. 9 at PageID 789. While none of the parties can identify the authoring doctor, there is no dispute that it was authored by a treating physician. *See* doc. 10 at PageID 805-06.

5

20 C.F.R. § 404.1563 and, therefore, disabled.[4] Doc. 9 at PageID 787. Finding that the ALJ erred in weighing the opinion of Plaintiff's treating physician, and finding that additional fact-finding is required before determining Plaintiff's disability based upon the Grid, the Court does not address Plaintiff's second alleged error.

The Court thus turns to Plaintiff's contention regarding his treating physician. "[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). Treating physicians and psychologists top the hierarchy. *Id*. "Next in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Id*. "[N]on-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions." *Id*. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

"An ALJ is required to give controlling weight to 'a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s)' if the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (citation omitted) (alterations in original). This requirement is known as the "treating physician" rule. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d

---

[4] The ALJ considers the Grid "in the fifth and final stage of the disability determination, after it has been determined that the claimant has not met the requirements of a listed impairment but is nevertheless incapable of performing past relevant work." *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). The Grid considers the vocational factors of age, education, work experience, and maximum sustained work capability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 200.00(a). A plaintiff's "maximum sustained work capability" is categorized as one of five "exertional levels" -- including the light and sedentary exertional levels -- and is defined as "[t]he highest functional level a person can perform on a regular work basis[.]" Social Security Regulation ("SSR") 83-10, 1983 WL 31251, at *6 (1983). These exertional levels are defined "in terms of the primary strength activities required." *Id*.; *see also* 20 C.F.R. § 404.1567.

399, 406 (6th Cir. 2009) (citation omitted).  Greater deference is given to treating source opinions "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]"  20 C.F.R. § 404.1527(c)(2); *see also Blakley*, 581 F.3d at 406.  Thus, an ALJ must give controlling weight to a treating source if the ALJ finds the treating physician's opinion well-supported by medically acceptable evidence and not inconsistent with other substantial evidence in the record.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion."  *Blakley*, 581 F.3d at 406-07.  "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Id*.

Thus, when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician."  *Id*. at 406; *see also* 20 C.F.R. § 404.1527(c).  In addition, unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions according to [these] factors, regardless of their source[.]"  *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

7

Here, the treating physician opined that Plaintiff could perform only sedentary work with no use of his arms above shoulder level and no more than two hours of repetitive grasping. PageID 782. Plaintiff argues that, given his education, inability to perform past relevant work, lack of transferable skills, and age at the time of the decision -- *i.e.*, 54, and therefore "[c]losely approaching advanced age," *see* 20 C.F.R. § 404.1563(d)[5] -- being limited to sedentary work would render him disabled under the Grid. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 2 § 201.14. The ALJ rejected the treater's opinion, giving it "no weight" because the treater's report "contains no support for [the] restrictions" set forth therein. PageID 64. Ultimately relying on the opinion of non-examining medical expert Ronald E. Kendrick, M.D., the ALJ found Plaintiff capable of performing a reduced range of light work. *See* PageID 63.

Initially, the undersigned notes that, although the foregoing opinion was, without dispute, given by a treating physician, the ALJ failed to mention the concept of controlling weight and conducted no specific controlling weight analysis in weighing his opinion, *i.e.*, whether the treater's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the case record." *See* 20 C.F.R. § 4406.1527(c)(2). In fact, the only reason given by the ALJ as justification for rejecting the treater's opinion, *i.e.*, that the report "contain[ed] no support for those restrictions,"[6] is a consideration relevant "only after the ALJ has determined that a treating-source opinion will not

---

[5] On December 21, 2014, Plaintiff turned 55, therefore becoming a person of advanced age. *See* 20 C.F.R. § 404.1563(e). Notably, as determined by the ALJ, Plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2016." PageID 60. Given the ALJ's findings in his decision, Plaintiff would be disabled under Grid Rule 202.06 at the time he turns 55. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 2 § 202.06.

[6] The Commissioner admits that "the ALJ's analysis of the treating opinion could have been more detailed." Doc. 10 at PageID 806.

be given controlling weight.[7] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). Thus, the Court cannot determine whether the ALJ undertook the "two-step inquiry" required when analyzing treating source opinions. This lack of explanation regarding the "controlling weight [analysis] hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation." *Id*. at 376-78. Such failure amounts to reversible error. *See Aytch v. Comm'r of Soc. Sec.*, No. 3:13-cv-135, 2014 WL 4080075, at *4 (S.D. Ohio Aug. 19, 2014).

The Commissioner argues that "the ALJ thoroughly discussed the objective evidence that did not support the treating opinion throughout his decision." Doc. 10 at PageID 806. However, the ALJ merely summarized the extensive objective findings of record -- *i.e.*, "multi-level spondylic changes" of the cervical spine; "severe stenosis at C4-5 and C5-6"; "an impingment on the spinal cord and deformation of the spinal cord"; as well as numerous findings with regard to Plaintiff's shoulders -- and never explained how such findings fail to support the treater's opinion. *See* PageID 65.

The Medical Expert, Dr. Kendrick, appears to have reached a different conclusion based upon his review of the evidence. *See* PageID 99-102. While, in some circumstances, "[a] non-examining physician's opinion may be accepted over that of an examining physician[,]" such acceptance generally occurs where "the non-examining physician clearly states the reasons that his [or her] opinion[] differ[s]." *Lyons v. Soc. Sec. Admin.*, 19 F. App'x 294, 302 (6th Cir. 2001). Here, however, Dr. Kendrick offers no explanation for the difference in opinion; and, in fact,

---

[7] The Court also notes that the Medical Exert, Dr. Kendrick, when testifying at the administrative hearing, offered no specific support or explanation for his opinion concerning Plaintiff's limitations. *See* PageID 99-102. Nevertheless, the ALJ gave his opinion "great weight." PageID 63. It is error for an ALJ to more strictly scrutinize the opinion of a treating physician. *Gayheart*, 710 F.3d at 379 (holding that "[a] more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation[s] require").

9

conceded that, based upon the objective medical evidence of record, "it's possible" that Plaintiff is as limited as he alleges. *See* PageID 99-102.

Based on all of the foregoing, the Court finds the ALJ erred in analyzing medical source opinions and, therefore, the non-disability finding must be reversed.

### IV.

When, as here, the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to order the award of benefits. Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming. *Id.*

While it may appear that the Grid directs a finding of disability, *see supra*, factual issues remain for determination by the ALJ. Specifically, in light of differing medical source opinions discussed *supra*, issues remain as to whether Plaintiff is capable of light exertional work or sedentary exertional work. Such a finding is critical in determining when disability benefits would commence, *i.e.*, whether Plaintiff's disability commenced sometime before his 55th birthday under Grid Rule 201.14, or after his 55th birthday under Grid Rule 202.06. Accordingly, the Court finds that an immediate award of benefits is inappropriate at this time and directs that the ALJ promptly conduct further proceedings consistent with this decision.

## V.

Accordingly, for the foregoing reasons:

1. The Commissioner's non-disability finding is found unsupported by substantial evidence, and **REVERSED**;

2. This matter is **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case is **TERMINATED** on the Court's docket.

**IT IS SO ORDERED**.

Date:   March 7, 2016                             *s/ Michael J. Newman*
                                                  Michael J. Newman
                                                  United States Magistrate Judge